CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 18 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL J. KENNY, | ) |
| Plaintiff, | ) Civil Action No. 7:10cv00293 |
| v. | ) MEMORANDUM OPINION |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | ) |
| Defendant. | ) By: Samuel G. Wilson<br>) United States District Judge |

This is a declaratory judgment action by plaintiff, Michael J. Kenny, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), seeking a declaration that defendant, Life Insurance Company of North America ("LINA"), has wrongfully determined that Kenny is no longer disabled under his employee benefit plan (the "Plan") and refused to waive Kenny's life insurance premium payments. The Plan provides life insurance for Plan participants, such as Kenny, and waives the premiums for that life insurance for disabled participants. LINA originally granted Kenny, who has not worked since 1995 due to multiple sclerosis, major depressive, generalized anxiety and post traumatic stress disorders, a waiver of premium benefit on March 20, 1997. However, nearly twelve years later, LINA concluded that Kenny was no longer disabled and notified him that it would no longer waive his premium payments. Kenny appealed LINA's decision twice and LINA upheld its decision each time. Kenny exhausted his administrative remedies and now seeks review in this court. Both parties stipulated to a *de novo* standard of review[1] and moved for summary judgment based on

---

[1] The Plan did not confer discretionary authority to its administrator. Therefore, a *de novo* standard of review is proper. See, e.g., Evans v. Eaton Corp. Long Term Disability Plan, 514 F.3d 315, 321 (4th Cir. 2008).

the administrative record.[2] The court finds that Kenny is disabled today, as he was in 1997, due to his progressively worsening multiple sclerosis and its associated mental disorders, and therefore grants Kenny's motion for summary judgment.

# I.

Kenny was employed by Carilion Health Systems. While employed there, Kenny became a participant of the Plan, which is governed by ERISA. LINA is the underwriting company for the Plan. The Plan provides life insurance coverage and waives the premiums for that coverage for Plan participants who become disabled. The applicable section of the Plan provides:

> We will not require any further life insurance premium to be paid for a covered employee:
>     a) After he has given us proof that he is disabled; and
>     b) After he has been disabled for 9 straight months; and
>     c) If he became disabled before his 60th birthday.
>
> A covered employee will be deemed "disabled," as used here, only if he cannot do any work for wage or profit.
>
> * * *
>
> This coverage will end when any one of these things happen:
>
>     a) 31 days after he is no longer disabled, if premium payments are not resumed.
>     b) 31 days after he is no longer eligible, for any reason other than being disabled.
>     c) 31 days after he refuses to be examined or fails to provide proof that he is disabled, as required above.

(R. at 217.)

Kenny was diagnosed with multiple sclerosis in October 1995 and has not worked on a consistent or regular basis since that time. When diagnosed, Kenny was working as a medical

---

[2] The court will only review the administrative record created by LINA that is currently before the court. See Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1026-27 (4th Cir. 1993) ("[C]ourts conducting *de novo* review of ERISA benefits claims should review only the evidentiary record that was presented to the plan administrator . . . except where the district court finds that additional evidence is necessary for resolution of the benefit claim.").

laboratory technician with Carilion. He had previously been a laboratory director, but requested fewer responsibilities and a demotion because his symptoms (then undiagnosed) did not allow him to adequately fulfill his duties as director. Multiple sclerosis is a "slowly progressive [central nervous system] disease . . . resulting in multiple and varied neurologic symptoms and signs, usually with remissions and exacerbations" which make it particularly difficult to treat. (R. at 290.) The "patient should maintain as . . . active a life as possible, but should avoid overwork and fatigue." (R. at 293.) Here, Kenny also has major depressive, generalized anxiety and post traumatic stress disorders that further complicate the effects of the disease. For these disorders and his multiple sclerosis, Kenny takes Zoloft, Protonix, Reglan, Wellbutrin and testosterone by monthly injection.

LINA found that Kenny was disabled and waived Kenny's premium payments from March 20, 1997, through January 22, 2009, when LINA informed Kenny that it would no longer provide him this benefit because it no longer considered him to be "disabled." According to LINA, recent medical evidence it reviewed failed to "reveal any clinical findings or functional loss that would prohibit [Kenny] from performing any work for wage or profit[,]" (R. at 10), because Kenny was able to do sedentary work. LINA purportedly based this decision on records and a statement from Kenny's attending physician, Dr. J. Gordon Burch, an evaluation by LINA's independent medical examiner, Dr. Clement A. Elechi, a disability questionnaire Kenny completed, and a transferrable skills analysis by LINA. On appeal, LINA also reviewed medical records from Kenny's psychiatrist, Dr. Ann E. Hedberg, additional evidence from Dr. Burch, a journal of Kenny's naps over a month, a video-taped interview of Kenny, and the findings of two additional independent medical examiners LINA hired to review Kenny's medical record, Dr. Seiferth and Dr. R. Norton Hall.

The administrative record shows that Dr. Burch saw Kenny biannually between July 2006 and July 2010.[3] (R. at 18, 64, 179-183.) The notes from his examinations reveal that Kenny's condition has been stable with no new symptoms referable to his multiple sclerosis, and that Kenny has also been receiving psychiatric treatment for his mental disorders. Dr. Burch's notes recite that Kenny has significant problems with fatigability and takes long naps daily. When Dr. Burch examined Kenny in January, 2008 and July, 2008, he found that Kenny's multiple sclerosis was in remission and that Kenny was "generally doing very well . . . from both neurological and psychiatric standpoints." However, after examining Kenny on January 5, 2010, Dr. Burch noted that "[a]ll [of Kenny's symptoms from his multiple sclerosis] have been persistent; some have worsened." (R. at 64.) Likewise, in notes from a January 7, 2010 examination, Dr. Burch explains that while Kenny's multiple sclerosis is stable in some respects, he still experiences duplication of images, graying vision in his left eye, a variety of colored lights in his visual field, the sense of electric shock going through his body, intermittent myoclonic jerking in his extremities and occasional full body jerks. (R. at 18.)

In the opinion of Dr. Burch, Kenny is disabled. On a form completed by Dr. Burch on June 20, 2008, he determined that Kenny's physical impairment was moderate, meaning that he was capable of sedentary activity, and that his mental impairment was also moderate, meaning that he is only able to engage in limited stress situation with limited interpersonal relations. But Dr. Burch went on to determine that Kenny was not suitable for rehabilitation services, vocational counseling or retraining or trial employment. On October 2, 2008, when a LINA employee asked Dr. Burch for clarification as to why he considered Kenny to be disabled, Dr. Burch explained that the nature of Kenny's diagnosis has a tremendous potential for impact on

---

[3] Although Kenny has been seeing a neurologist since 1995, the court views the time period of 2006 – 2010 as the most relevant because LINA only determined that Kenny was no longer disabled in 2009.

4

the nervous system and his symptoms could flare at any time. (R. at 152.) Likewise, in a letter sent to LINA on August 9, 2009, Dr. Burch explained that the "total impact of [Kenny's multiple sclerosis and depression] render[s] him totally and permanently disabled from regular gainful employment. Though his [multiple sclerosis] has been stable for a time, he does experience intermittent myoclonic jerks and . . . severe fatigability rendering sustained motor performance impossible." (R. at 44.)

Dr. Hedberg, who is treating Kenny's associated mental disorders reported on March, 30 2009, that while Kenny's symptoms seem to be under better control, he "continues to describe fatigue, anxiety, . . . irritability, decrease in concentration, [and] anhedonia. . . . [H]e is generally anxious most of the time, [and] has difficulty leaving his house. He experiences flashbacks, nightmares, intrusive thoughts, and automatic triggers to reminders of problems he had when he was working." (R. at 52.) Dr. Hedberg also noted that Kenny's mental problems have increased due to his multiple sclerosis and that he is sometimes "unable to complete activities of daily living, demonstrates impaired concentration, as well as depression and anxiety which [interfere] with his ability to function successfully in a job." (R. at 24.)

LINA had Dr. Elechi examine and evaluate Kenny. Dr. Elechi's December 4, 2008 report describes Kenny's multiple sclerosis as a "relapsing-remitting disease," (R. at 160), and notes that "Kenny reports progressive worsening of a number of symptoms over the years." (R. at 157.) Dr. Elechi found from a motor examination that Kenny exhibited fatigability, gait instability, and had a positive Romberg sign – a neurological test for balance.[4] He also noted that Kenny had bilateral cataracts. Dr. Elechi administered a "Mini Mental State Examination," on which Kenny scored a 28/30, which is in the normal range. (R. at 123.) According to Dr.

---

[4] "Romberg's signs are indicative of diseases of the nervous system[.]" Guerrero v. Astrue, 2010 U.S. Dist. LEXIS 101315, at *16 n.7 (C.D. Ca. Sept. 24, 2010) (internal quotation marks and citation omitted).

Elechi, Kenny's symptoms include fatigue, memory and concentration difficulty, significant visual impairment, gait instability, sphincter disturbance, and the inability to tolerate "high environmental temperature's."[5] Although Dr. Elechi noted that Kenny is currently able to lead an independent life, he opined that all of these symptoms may be compromising Kenny's ability to function.

LINA also hired two additional independent medical examiners, Dr. Seiferth and Dr. Hall, to review Kenny's medical records. Neither physician examined Kenny. On May 5, 2009, Dr. Seiferth reviewed all of the relevant medical, clinical and vocational information and recorded his opinion that "Mr. Kenny does not present with a loss of capacity to preclude sedentary activity." (R. at 60.) Similarly, on April 4, 2010, Dr. Hall wrote on a claim review form that his "[m]edical record review failed to reveal documented, significant, quantifiable [and] clinical findings, functional loss, or physical impairments to support the imposed [work] restrictions" (R. at 12.)

LINA had a certified vocational rehabilitation consultant complete a transferrable skill analysis, which purported to match Kenny's medical limitations, using Dr. Elechi's analysis of Kenny's physical abilities, with Kenny's education and past employment.[6] According to the vocational consultant's analysis, which LINA relied on in determining that Kenny was not disabled, Kenny could perform the duties of a clerical or service job requiring minimal physical

---

[5] With regard to his fatigability, Kenny explained in his nap log and video interview that he has to nap for several hours a day. Kenny's nap log details all of the naps he took over the month of March 2009 and his video interview explains the course of his disease throughout the past several years and its recent progression.

[6] As part of his examination, Dr. Elechi completed an analysis of Kenny's ability to complete certain tasks during a work day. While LINA points to this analysis to show that Kenny is indeed able to perform sedentary work, the court views the evidence differently. Indeed, Dr. Elechi opined that Kenny could only sit, including meal breaks and positional changes, for between 2.5 and 5.5 hours a day and could only stand or walk for a period of time under 2.5 hours. The review shows that Kenny would be unable to complete any task lasting over 5.5 hours over an eight hour workday, including breaks. Dr. Elechi's finding that Kenny's functionality is compromised by his fatigability and his finding that Kenny would be unable to sit for a full day of work makes the transferrable skills analysis less reliable.

exertion, such as telephone solicitor, customer service representative or check cashier. Based on this transferrable skills analysis, and its conclusion that he could perform sedentary work, LINA determined that Kenny no longer met the Plan's definition of disabled. Kenny disputed this decision and appealed it twice, but LINA affirmed its earlier decision each time. After exhausting his administrative remedies, Kenny filed a complaint in state court seeking a declaratory judgment that he is disabled under the Plan and seeking attorney's fees. LINA removed the case to this court, and both parties filed motions for summary judgment. Finding no reason to hear additional evidence, the court decides the case on the administrative record.

## II.

An evaluation of the evidence persuades the court that Kenny has a permanent and progressively worsening disease with associated physical symptoms and mental disorders – the combination of which substantially interferes with his ability to consistently perform all forms of work, including sedentary work. Accordingly, the court finds that Kenny "cannot do any work for wage or profit," and is disabled under the Plan's language, as he has been since 1997. Therefore, the Plan wrongly terminated Kenny's life insurance premium waiver.

The court reviews the administrator's decision *de novo*. Therefore, the court gives no deference to the Administrator's previous finding that Kenny is not disabled. See Haley v. Paul Revere Life Ins. Co., 77 F.2d 84, 88 (4th Cir. 1996) ("[In cases of *de novo* review,] the administrator's decision receives no deference from the court because the contract does not confer discretionary authority on the administrator."); Lucy v. Macsteel Serv. Ctr. Short Term Disability Plan, 107 Fed. App'x 318, 320 (4th Cir. 2004) ("[T]he district court owed no deference to the plan administrator's factfinding or interpretation of ambiguous plan provisions [where there was *de novo* review]."). Although a court need not give the opinion of a treating

physician greater weight than the opinion of a non-treating physician, see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003), a court reviewing an administrative finding *de novo* is free to find a treating physician's opinion more persuasive than the opinion of a non-treating physician if that court so finds.

Here, the court finds that Kenny's condition has progressively worsened over the past fourteen years and, although his condition is currently somewhat stable, he still has notable fatigability, intermittent myoclonic jerks, gait instability, problems with concentration and memory, severely impaired vision, and sphincter disturbance – all of which are complicated by his major depressive, generalized anxiety and post traumatic stress disorders. Though the Plan's language does not further define the phrase "cannot do any work for wage or profit," the court interprets the phrase according to its natural and common-sense meaning.[7] The court interprets the language to mean that a claimant cannot hold regular and gainful employment over time.

The court finds that the opinions of Kenny's treating physicians, Dr. Burch and Dr. Hedberg, are more persuasive than the opinions of the three physicians hired by LINA. Both of Kenny's treating physicians, who separately opine that Kenny is disabled, formed their opinions through close doctor-patient relationships[8] and their opinions are well supported by medical determinations concerning Kenny's history with multiple sclerosis, generalized depressive, general anxiety and post-traumatic stress disorders. Although Kenny's multiple sclerosis is in remission, many of Kenny's symptoms remain and have worsened. His mental disorders, and

---

[7] The language "any work for wage or profit" is not new to this policy. See, e.g., Burns v. Aetna Life Ins. Co., 123 S.W. 2d 185, 192 (Mo. Ct. App. 1939); Metro. Life Ins. Co. v. Mfrs. Nat'l Bank, 54 Ga. App. 771, 772 (Ga. Ct. App. 1936); Cantor v. Metropolitan Life Ins. Co., 164 A. 145, 145 (Pa. Super. Ct. 1933).

[8] Other courts have noted that the opinion of a psychiatrist who has personally examined a patient is often more persuasive since a psychiatrist treats a patients subjective symptoms which are better evaluated in person. See Seehan v. Metropolitan Life Ins. Co., 368 F. Supp. 2d 228, 255 (S.D.N.Y. 2005); Haisley v. Sedgwick Claims Mgmt. Servs., 2011 U.S. Dist. LEXIS 20751, at *41-42 (W.D. Pa. March 2, 2011) ("Because Haisley's claim was based on a confluence of mental and physical impairments, it weighs against defendants for Sedgwick to place considerable weight on opinions expressed by medical professionals who never examined her.").

their impact, fluctuate, but are not in remission. Furthermore, both Dr. Burch and Dr. Hedberg's opinions that Kenny is disabled are based on an understanding of the totality of Kenny's physical and mental state – taking both his multiple sclerosis and mental disorders into account.

Aside from the Mini-Mental Status Exam completed by Dr. Elechi, LINA's determination that Kenny is not disabled appears to be based on his physical capabilities only, rather than on a combination of his physical and psychiatric health. The court finds the opinions of the other two independent medical examiners hired by LINA, who agreed that Kenny could work at a sedentary level after reviewing his medical record, unpersuasive. Dr. Elechi did not articulate an opinion as to whether Kenny was disabled, but his analysis confirms that Kenny's symptoms would hinder his ability to return to work. That Kenny could possibly put in a full day of work at some point does not preclude a finding that he is disabled – rather the fact that he cannot regularly sustain gainful employment means that he is disabled under the Plan and is entitled to receive a waiver of his life insurance premiums.

### III.

For the reasons set forth herein, the court grants Kenny's motion for summary judgment, denies LINA's motion, declares that Kenny is disabled under the Plan, and is entitled to receive a waiver of his life insurance premiums.[9]

**ENTER:** March 17, 2011.

UNITED STATES DISTRICT JUDGE

---

[9] Though the court renders a judgment on the merits, it retains jurisdiction to entertain a motion for attorney's fees, see, e.g., Cross v. Bragg, 329 Fed. App'x. 443, 458 (4th Cir. 2009), as Kenny has achieved "some degree of success on the merits," Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010).